# Exhibit 2

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA


1)    TERRY L. DENTON,              )
2)    CYNTHIA R. DENTON,            )
                                    )
           Plaintiffs,             )
                                    )
v.                                 ) CASE NO.
                                    )
1)    NATIONSTAR MORTGAGE LLC       ) 4:18-cv-00241-GKF-JFJ
      d/b/a MR. COOPER AS          )
      SUCCESSOR TO SETERUS, INC.,)
2)    FEDERAL NATIONAL MORTGAGE     )
      ASSOCIATION,                 )
                                    )
           Defendants.             )



*********************************************************

ORAL DEPOSITION OF

FEDERAL NATIONAL MORTGAGE ASSOCIATION

BY AND THROUGH ITS DESIGNATED REPRESENTATIVE

ERICH LUDWIG

OCTOBER 29, 2019

VOLUME 1 OF 1

*********************************************************

ORAL DEPOSITION OF ERICH LUDWIG

Page 2

1              ORAL  DEPOSITION  OF  ERICH  LUDWIG,  designated

2   representative  of  Federal National Mortgage Association,

3   produced  as  a  witness  duly sworn by me at the instance

4   of  the  Plaintiffs,  was  taken  in  the above-styled and

5   numbered  cause  on OCTOBER 29, 2019, from 9:07 AM to 2:39

6   PM,  before  Beth  Howard,  CSR  in  and  for the State of

7   Texas,  reported  by  Machine  Shorthand,  at  David Glenn

8   Law,  located  at  1017 William D. Tate Avenue, Grapevine,

9   Texas,  pursuant  to the Federal Rules of Civil Procedure,

10  Notice  of  Deposition,  and  the provisions stated on the

11  record or attached hereto.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                  A P P E A R A N C E S

 2    FOR THE PLAINTIFFS:

 3          LUKE WALLACE, ESQ.
            DAVID HUMPHREYS, ESQ.
 4          Humphreys Wallace Humphreys, P.C.
            9202 South Toledo Avenue
 5          Tulsa, Oklahoma  74137
            (918) 747-5300 - FAX: (918) 747-5311
 6          luke@hwh-law.com
            david@hwh-law.com
 7

 8    FOR THE DEFENDANT FEDERAL NATIONAL MORTGAGE ASSOCIATION:

 9          ERNEST P. WAGNER, ESQ.
            Maurice Wutscher LLP
10          105 West Madison Street, 18th Floor
            Chicago, Illinois  60602
11          (312) 730-6803
            ewagner@mauricewutscher.com
12
            CHARLOTTE RITZ, ESQ.
13          Federal National Mortgage Association
            (214) 242-8363
14          charlotte_m_ritz@fanniemae.com

15

16

17

18

19

20

21

22

23

24

25
```

ORAL DEPOSITION OF ERICH LUDWIG

Page 6

1            THE REPORTER:  Do counsel agree to waive

2      the reading of the 30(b)(5) requirements into the

3      record?

4            MR. WALLACE:  Yes.

5            MR. WAGNER:  Yes.

6            THE REPORTER:  Are there any other

7      agreements or stipulations before we begin?

8            MR. WALLACE:  Just taken pursuant to

9      Federal Rules.

10            (OATH ADMINISTERED BY THE REPORTER.)

11                  ERICH LUDWIG,

12      having been first duly sworn, testified as follows:

13                  EXAMINATION

14      BY MR. WALLACE:

15      Q.  Good morning.

16      A.  Morning.

17      Q.  Would you please tell us your name.

18      A.  Erich Ludwig.

19      Q.  Mr. Ludwig, my name is Luke Wallace.  I

20      represent Cynthia and Terry Denton --

21      A.  Um-hmm.

22      Q.  -- who have filed a lawsuit against Setarus --

23      now NationStar -- and Fannie Mae.

24            I understand that you are here on behalf of

25      Fannie Mae.  Is that correct?

ORAL DEPOSITION OF ERICH LUDWIG

Page 7

1       A.   Yes.

2       Q.   How long have you been -- I'm assuming you're

3   employed by Fannie Mae.

4       A.   Yes.

5       Q.   How long have you been employed by Fannie Mae?

6       A.   11 years.

7       Q.   And what do you do for Fannie Mae?

8       A.   I'm currently a manager of the Servicer Support

9   Center.

10      Q.   What is a Servicer Support Center?

11      A.   The Servicer Support Center oversees the

12  handling of any inquiries from any of our 800 to 1,000

13  servicers that manage Fannie Mae mortgages.  Those

14  inquiries are either emails or calls.

15      Q.   800, roughly, servicers?

16      A.   Yeah.  800 to 1,000, yes.

17      Q.   What are "servicers" that you're speaking of?

18  Give us --

19      A.   Banks that we've given a responsibility to

20  manage our mortgages from a -- from a payment and

21  oversight standpoint.

22      Q.   And you said you oversee this group that takes

23  inbound and --

24      A.   And calls, yes.

25      Q.   -- phone calls?

ORAL DEPOSITION OF ERICH LUDWIG

Page 16

1    the note and mortgage, that you're aware of, based on

2    your training and experience?

3        A.   No.

4        Q.   So besides the homeowner, is there any other

5    party that has any responsibilities within the note and

6    mortgage?

7        A.   The servicer has that responsibility.

8        Q.   And how did this responsibility arrive at the

9    servicer's doorstep, if you will?

10        A.   They are the ones responsible for collecting

11    the payment.

12        Q.   And is that because Fannie Mae has said or

13    designated that to occur?

14        A.   We don't designate the servicer.

15        Q.   Who designates the servicer?

16        A.   When the loan is originated, a bank can decide

17    whether they will service it themselves, or determine

18    that they will use a servicer to do that for them.

19        Q.   Okay.  What's your understanding about the

20    history of this note and mortgage that the Dentons

21    entered into as far as the bank that originally owned

22    it?

23        A.   Not familiar with the originating bank.  We --

24    we do not originate loans.

25        Q.   And is it your understanding that the original

ORAL DEPOSITION OF ERICH LUDWIG

Page 51

1       Q.   And how do you establish intent at Fannie Mae?

2       A.   Fannie Mae doesn't establish intent.  The

3    servicer does on our behalf.

4       Q.   How does your servicer establish intent for

5    Fannie Mae?

6       A.   The guide is silent on this point.  But in --

7    in general, servicers traditionally get something in

8    writing from the borrower indicating how they would like

9    those funds to be applied, whether it be to repairs or

10   to pay off the loan.

11      Q.   Did you see a facsimile from my clients in --

12   January 11th?

13      A.   January.  Yes.

14      Q.   Did that express intent --

15      A.   Yes.

16      Q.   -- that they wanted to pay off the loan?

17      A.   Yes.

18      Q.   All right.  And was the loan paid off at that

19   point?

20      A.   When the funds were received, they were not a

21   full payoff.

22      Q.   And why is that?

23      A.   Because the funds were received after a late

24   charge was incurred on the account.

25      Q.   Where did Fannie Mae receive this information

ORAL DEPOSITION OF ERICH LUDWIG

Page 52

1    that you're telling us about that the funds were

2    received after a late charge was assessed?  What's the

3    basis for you to say that?  What are you relying on?

4         A.  This is what Setarus relayed to us as a -- from

5    a timeline perspective.

6         Q.  Okay.  When did they relay this to you from a

7    timeline perspective to Fannie Mae?

8         A.  The evidence that they provided for this case.

9         Q.  So is it a document that you're relying on?

10        A.  It's the evidence that we asked for and -- to

11   review this case:  The correspondence, the requests for

12   payoff, the interactions.

13        Q.  Sure.  And I'm -- I really want to drill down.

14   I really want to know what's this document -- the source

15   document that Fannie Mae is using to say that my

16   client -- the payoff funds were received after a late

17   charge was assessed.

18        A.  From our understanding, this is what the

19   servicer communicated to us.

20        Q.  What's the document?  Is this a phone call

21   between you and Setarus or -- when I say "you,"

22   Fannie Mae and Setarus -- or is there a record here that

23   you're relying on?

24        A.  Again, I can't speak to the accuracy.

25        Q.  I didn't ask that.

ORAL DEPOSITION OF ERICH LUDWIG

Page 53

1        A.   I can say that in the evidence they provided

2   this was a document with a timeline that broke that out.

3        Q.   When's the last time you saw that timeline?

4        A.   Yesterday.

5        Q.   Okay.  And I take it you have other matters you

6   deal with at Fannie Mae.

7        A.   Yes.

8        Q.   The Denton matter, is this one of those matters

9   that's on the top of your head at all times?

10        A.   Well, it's -- right now it is, yes.

11        Q.   And when you reviewed this document yesterday,

12   is it one of those things that helped refresh your

13   memory of the facts so that you could prepare and give

14   us the best testimony today?

15        A.   Yes.

16             MR. WAGNER:  Counsel, if I may interject.

17             To the best of my knowledge there is no

18   Setarus timeline.  I made a timeline and that's my work

19   product.  So if this is going where you want to request

20   my work product, I'll object.

21             He reviewed that together with all the

22   original documents.  But I'm not aware of another

23   timeline besides mine that just has dates.

24             MR. WALLACE:  Okay.

25             MR. WAGNER:  Sort of a case chronology, if

1    handled the case would be here, yes.

2         Q.   Okay.

3         A.   But I can't say in all circumstances.

4         Q.   I'm not asking in all circumstances.  I'm

5    speaking in this circumstance today, in this lawsuit.

6         A.   Yeah.

7         Q.   Is it your understanding that Mr. Wagner

8    represents --

9         A.   Yes, Fannie Mae.

10        Q.   And Setarus/NationStar?

11        A.   It is my understanding that he worked on behalf

12   on this case.  I don't know --

13        Q.   What does that mean, "he worked on behalf"?

14        A.   Worked on this -- the firm worked as the

15   default attorney to handle this case, to handle this

16   litigated case.

17        Q.   And would that be another way of saying that he

18   represented Setarus/NationStar in this case, too?

19        A.   I would say so, yes.

20        Q.   So as you sit here today, Fannie Mae's

21   corporate representative, the reason the loan was not

22   paid off as requested by the Dentons in January of

23   2017 --

24        A.   Um-hmm.

25        Q.   -- is because the payoff funds, when they were

Case 4:18-cv-00241-GKF-JFJ  Document 118-2 Filed in USDC ND/OK on 02/21/20  Page 12 of 22

1    received, they were received after a late charge had

2    been assessed?

3         A.  Yes.

4         Q.  And that late charge is what prevented this

5    loan from being paid off in January of 2017?

6         A.  Yes.

7         Q.  And that's Fannie Mae's position today, October

8    29th, 2019?

9         A.  What position?

10        Q.  That the reason the loan was not paid off in

11   January of 2017, when the payoff funds were received, is

12   because they were received after a late charge had been

13   assessed by the servicer.

14        A.  That was the servicer's decision, and that's

15   Fannie Mae's understanding of the servicer's decision.

16        Q.  And that's Fannie Mae's position in this case?

17        A.  Fannie Mae doesn't necessarily have a position

18   about -- about that.  It just -- that's just what the

19   servicer decided to do.

20        Q.  Let me hand you what has been marked by the

21   lawyers for Setarus as Setarus/Denton 579 through 581.

22             Do you recognize Setarus/Denton 579 through

23   581?

24        A.  Yes.

25        Q.  What is it?

ORAL DEPOSITION OF ERICH LUDWIG

1      A.   It's a payoff statement.

2      Q.   And it's a payoff statement from Setarus to my

3  clients, the Dentons; is that correct?

4      A.   Yes, that's correct.

5      Q.   What's the date of that payoff statement?

6      A.   Date of that payoff statement is January 12th,

7  2017.

8      Q.   And is -- as look at it, this is a document

9  you're familiar with?

10     A.   Yes.

11     Q.   There's certain conditions to pay off the loan

12 that Setarus is telling the Dentons about, correct?

13     A.   That is correct.

14     Q.   And is -- there's an amount that the Dentons

15 are told will have to be paid by a certain date if they

16 want to pay off the loan, correct?

17     A.   Correct.

18     Q.   What is that amount?

19     A.   $41,031.18.

20     Q.   And by when must that amount be paid to pay off

21 this loan at the Dentons'?

22     A.   January 20, 2017.

23     Q.   So the letter's dated January 12th, and they've

24 got basically an eight-day window to pay this

25 $41,031.18?

ORAL DEPOSITION OF ERICH LUDWIG

Page 58

1        A.   That is correct.

2        Q.   And if that amount is received by Setarus on or

3   before January 20th, 2017, the loan is paid off?

4        A.   Subject to the payoff conditions outlined

5   below.

6        Q.   What are the payoff conditions?

7        A.   Additional interest is required after that

8   date, any charges posted to your account after this

9   date, and a late charge of 19.66, according to the loan

10   agreement.

11        Q.   Okay.  Let's break those out.

12             So if the payoff funds are received after

13   January 20th, 2017, there's additional interest of $7.17

14   required each day after that, right?

15        A.   That is correct.

16        Q.   Okay.  So if the funds were received on or

17   before January 20th, we're not dealing with the $7.17

18   interest per day, correct?

19        A.   That's correct.

20        Q.   If any -- Condition Number 2:  If any

21   additional -- excuse me.  Strike that.

22             Condition 2 is, "If any charges, including

23   escrow disbursements, are posted to your account after

24   the date of this letter, you also have to pay those

25   charges," correct?

ORAL DEPOSITION OF ERICH LUDWIG

1    sure --

2         A.   Sure.

3         Q.   This contract is between Fannie Mae and your

4    servicers, correct?

5         A.   Yes.

6         Q.   Now, in the document, if we'll flip over to

7    what is Page 196 -- marked by the lawyers, that is, and

8    it's Page 1 of 22 for the document.

9              It says at the very beginning, "Mortgage

10   Selling and Servicing Contract."  It says it's between

11   the mortgage lender and Fannie Mae.  Short for Federal

12   National Mortgage Association, correct?

13        A.   Yes.

14        Q.   But identifies the lender as -- the lender

15   under this contract is not going to be Fannie Mae; it's

16   going to be the other party to the contract, right?

17        A.   Yes.

18        Q.   Okay.  And in this instance, that's Setarus,

19   correct?

20        A.   Correct.

21        Q.   And is it your understanding that NationStar

22   also is subject to this contract?

23        A.   Correct.

24        Q.   And in the -- the contract here, one of the

25   purposes it identifies is to provide the terms and

Page 73

1          Are you with me?

2     A.  Yes.

3     Q.  There's a Paragraph Number 3 here under

4  Section A, "Servicing duties of the lender."

5          Do you see that?

6     A.  Yes.

7     Q.  Would you read for us the first language we

8  have there underneath that "Servicing According to the

9  Guides"?

10    A.  "Any mortgage serviced under this Contract,

11  which we own or in which we have purchased a

12  participation interest, must be serviced by the Lender

13  according to the provisions in our Guides that are in

14  effect on the date of this Contract or as amended in the

15  future."

16    Q.  Okay.  A couple things to unpack there.

17          This is -- The Dentons' loan, which was

18  being serviced by Setarus, is one of those that

19  Fannie Mae purchased, correct?

20    A.  Yes.

21    Q.  And when it tells -- it mentions the lender,

22  but the lender here, as we mentioned a minute ago,

23  that's Setarus underneath this contract, right?

24    A.  That is correct.

25    Q.  And when it says "the provisions in our

ORAL DEPOSITION OF ERICH LUDWIG

Page 104

1    rebuilt, then the servicer must use the insurance loss

2    proceeds to reduce the outstanding mortgage loan debt"?

3    Any discretion there?

4        A.   I don't think there's discretion in that

5    statement, but, again, I'm not -- I'm not an attorney.

6        Q.   No, but you are the corporate representative

7    for Fannie Mae?

8        A.   Yes.

9        Q.   And Fannie Mae creates these guidelines, right?

10       A.   Yes.

11       Q.   And the purpose of the guidelines is to provide

12   instruction and direction to the servicers?

13       A.   That is correct.

14       Q.   Are the servicers also supposed to understand

15   and interpret, if you will, the note and mortgage?

16       A.   Yes.

17       Q.   Does Fannie Mae have an obligation to

18   understand and interpret the note and mortgage?

19                MR. WAGNER:  Objection to form.

20       Q.   (BY MR. WALLACE) If you know.

21       A.   This is something we ask our servicers to do.

22       Q.   Is Fannie Mae a party to the note and mortgage

23   with the Dentons?

24       A.   Yes.

25       Q.   But Fannie Mae doesn't have any obligations

Page 105

1   whatsoever under the note and mortgage?

2            MR. WAGNER:  Objection to form.

3       Q.  (BY MR. WALLACE) Let me ask you:  Does

4   Fannie Mae have any obligations or responsibilities

5   under the note and mortgage?

6       A.  We outline the servicer's responsibilities in

7   the Servicing Guide, what they should do.

8       Q.  Does Fannie Mae have any obligations or

9   responsibilities to the Dentons in the -- as being a

10  party to the note and mortgage?

11      A.  We -- we transfer the responsibility -- the

12  responsibility is given to the servicer to -- to govern

13  how that loan should be serviced.  We don't have a

14  relationship with the Dentons.

15      Q.  Let me have you go back to what was produced

16  and marked by Fannie Mae as Fannie Mae/Denton 156

17  through 166.

18            What is that?  It's a couple of emails, it

19  appears?

20      A.  Email correspondence.

21      Q.  And it looks like it's also an inquiry -- a

22  complaint from my clients to Fannie Mae?

23      A.  I wouldn't necessarily -- "complaint."

24      Q.  How would you describe the July 28th -- is it

25  an inquiry?

ORAL DEPOSITION OF ERICH LUDWIG

Page 113

1  there like a summary somewhere that tells you when

2  particular sections were updated throughout the years?

3      A.  Within -- within FannieMae.com there's a link

4  of all servicing announcements.  So you can look at

5  historically when changes and updates happen, and that

6  is also available on FannieMae.com.  You can find that

7  where you find the Servicing Guide.

8      Q.  Okay.  Thank you.

9          Did Setarus ever make a determination or a

10  finding of whether or not it was economically feasible

11  to repair this property?

12      A.  I do not know that.

13      Q.  I'll hand you what's been marked by lawyers for

14  Setarus as Setarus/Denton 134 and 866.

15          Tell me when you're ready to discuss that.

16      A.  I'm ready.

17      Q.  First, this is a fax from my client to Setarus,

18  dated January 11th, 2017?

19      A.  Yes.

20      Q.  And would you agree that it expresses the

21  intent of the borrowers to use the insurance proceeds

22  from Allstate to pay off the mortgage?

23      A.  It does.

24      Q.  Thank you.

25          MR. WALLACE:  Let's go off the record for a

Page 143

1      Q.   So was it done at Fannie Mae's direction, then,

2   to release the lien?

3      A.   At Fannie Mae's direction.

4      Q.   And it was based on the totality of the

5   circumstances?

6      A.   That is correct.

7      Q.   And I've also received notice that just --

8   we're October 2019 -- last month, in September, that the

9   mortgage loan balance, the money that -- we received

10  notice that who's servicing it now, NationStar, has

11  applied the funds to the Denton account now which were

12  received back in January of 2017.

13           Are you aware of that?

14     A.   Yes.

15     Q.   And was that at the direction of Fannie Mae,

16  too, to apply those funds to pay off the loan?

17     A.   That is correct.

18     Q.   And can you help us understand why that did not

19  occur until September of 2019, when the funds were

20  received in January of 2017?

21           MR. WAGNER:  Object to form.

22     A.   We received notice in June of 2019 of this

23  lawsuit.

24           At that point, we reviewed all the case

25  details and made the decision, based on circumstances --

ORAL DEPOSITION OF ERICH LUDWIG

Page 159

```
 1               IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF OKLAHOMA
 2

 3   1)   TERRY L. DENTON,              )
     2)   CYNTHIA R. DENTON,            )
 4                                      )
                    Plaintiffs,         )
 5                                      )
     v.                                 ) CASE NO.
 6                                      )
     1)   NATIONSTAR MORTGAGE LLC       ) 4:18-cv-00241-GKF-JFJ
 7        d/b/a MR. COOPER AS           )
          SUCCESSOR TO SETERUS, INC.,)
 8   2)   FEDERAL NATIONAL MORTGAGE     )
          ASSOCIATION,                  )
 9                                      )
                    Defendants.         )
10

          REPORTER'S CERTIFICATION OF ORAL DEPOSITION OF
11           FEDERAL NATIONAL MORTGAGE ASSOCIATION
           BY AND THROUGH ITS DESIGNATED REPRESENTATIVE
12                        ERICH LUDWIG
                       OCTOBER 29, 2019
13

14        I, BETH HOWARD, a Certified Shorthand Reporter

15   in and for the State of Texas, hereby certify to the

16   following:

17        That the witness, ERICH LUDWIG, was duly sworn and

18   that the transcript of the oral deposition is a true

19   record of the testimony given by the witness;

20        That the deposition transcript was duly submitted on

21   _____ to ERNEST P. WAGNER, ESQ., Maurice Wutscher

22   LLP, 105 W. Madison Street, 18th Floor, Chicago,

23   Illinois 60602, for examination, signature and return to

24   Bradford Court Reporting, LLC by _____;

25        That pursuant to information given to the deposition
```

Page 160

1   officer at the time said testimony was taken, the

2   following includes all parties of record and the amount

3   of time used by each party at the time of the

4   deposition:

5        LUKE WALLACE, ESQ. (04 hours, 11 minutes)
             Attorney for Plaintiffs
6        ERNEST P. WAGNER, ESQ. (00 hours, 02 minutes)
             Attorney for Defendants
7

8        I further certify that I am neither counsel for,

9   related to, nor employed by any of the parties or

10  attorneys in the action in which this proceeding was

11  taken, and further that I am not financially or

12  otherwise interested in the outcome of the action.

13       Certified to by me on this 12th day of November,

14  2019 day of May, 2012.

15

16

17
                    _____
18                  BETH HOWARD, TEXAS CSR 529
                    EXPIRATION DATE: 04/30/2021
19                  Bradford Court Reporting, L.L.C.
                    Firm Registration No. CRF-38
20                  7015 Mumford Street
                    Dallas, Texas  75252
21                  (972) 931-2799 - Fax (972) 931-1199

22

23

24

25