IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

TERRY L. DENTON and CYNTHIA R. DENTON,

    Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC, D/B/A MR. COOPER AS SUCCESSOR TO SETERUS, INC. and FEDERAL NATIONAL MORTGAGE ASSOCIATION,

    Defendants.

Case No. 18-CV-241-GKF-JFJ

**OPINION AND ORDER**

    Before the court are two motions for partial summary judgment. The first was filed by defendant Nationstar Mortgage, LLC d/b/a Mr. Cooper (Mr. Cooper) [Doc. 103]. The second motion was filed by plaintiffs Terry and Cynthia Denton [Doc. 106]. For the reasons set forth below, Mr. Cooper's motion is granted as to Counts I, IX, and X of the Second Amended Complaint and is otherwise denied; the Dentons' motion is granted in part and denied in part.

**I. Background and Procedural History**

    This lawsuit arises out of the failure of a mortgage loan servicer to apply an insurance settlement check to pay off the Dentons' promissory note and release the mortgage. The Dentons filed suit on March 15, 2018 in Oklahoma state court against Bank of America, N.A. (BANA) and Seterus, Inc. BANA then removed the action to this court.

    Upon removal, Seterus and BANA filed motions to dismiss for failure to state a claim. The Dentons filed their First Amended Complaint, mooting the two motions to dismiss. Seterus and BANA then filed motions to dismiss the First Amended Complaint. The court granted BANA's

motion and terminated BANA as a party, and granted Seterus's motion to dismiss counts II, V, and VI. The Dentons then requested leave to file a Second Amended Complaint substituting Mr. Cooper as successor to Seterus and adding Fannie Mae as a defendant. The court granted the motion and the Dentons filed their Second Amended Complaint on June 3, 2019. On September 19, 2019, the Dentons requested leave to file a Third Amended Complaint, which the court denied because the request was filed four months beyond the deadline and the proposed amendment was based on facts the Dentons previously knew or should have known.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (quoting *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002)). "A 'material' fact is one 'that might affect the outcome of the suit under the governing law, . . . and a 'genuine' issue is one for which 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation omitted).

## III. Undisputed Material Facts

In August 1998, the Dentons obtained a $59,850 home loan from NationsBanc Mortgage Corporation. [Doc. 103, p. 2, ¶ 1; Doc. 188, p. 2, ¶ 1]. The loan was evidenced by a promissory note and secured by a mortgage. [*Id.*]. Later that year, Fannie Mae obtained ownership of the loan. [Doc. 103, p. 2, ¶ 3; Doc. 118; p. 3, ¶ 3]. Seterus, Inc. began servicing the loan effective

June 1, 2016. [Doc. 103, p. 2, ¶ 4; Doc. 118, p. 3, ¶ 4]. Mr. Cooper acquired Seterus, Inc. on March 1, 2019. [Doc. 103, p. 2, ¶ 6; Doc. 118, p. 4, ¶ 6].

On April 12, 2016, the Dentons' home was destroyed by a fire. [Doc. 106, p. 2, ¶ 1].[1] On January 11, 2017, the Dentons sent Seterus a letter via facsimile requesting a pay-off amount be provided to their insurer "so they can cut Seterus [a] payoff check and pay off [the] mortgage." [Doc. 106, p. 3, ¶ 3; *see also* Doc. 106-3, pp. 2-3]. On January 12, 2017, Seterus provided a payoff quote to Allstate in the amount of $41,031.18 to expire on January 20, 2017, subject to certain conditions. [Doc. 106, p. 3, ¶ 5]. The same day, Allstate overnighted a check for $41,031.18 to Seterus. [Doc. 106, p. 3, ¶ 6].[2] The cover letter for the check stated "[p]lease find enclosed payoff payment for loan #****8588. The borrower is Terry L. Denton." [*Id.*; *see also* Doc. 106-6, p. 2]. The next day, Friday, January 13, 2017, Seterus employee Arica Craig signed for receipt of the check. [Doc. 106, p. 3, ¶ 8].

Seterus documented the funds as received on Thursday, January 19, 2017. That day, six days after Ms. Craig signed for receipt of the check, Seterus placed the $41,031.18 in a Hazard Claim Funds account instead of applying the funds to pay off or pay down principal, interest or other amounts Seterus claimed was owed on the note. [Doc. 106, p. 4, ¶ 11]. Seterus continued

---

[1] Mr. Cooper objected generally to the Dentons' statement of undisputed facts and specifically to paragraphs 3, 4, 6, 7, 9, 10, 12, 18, 19, 22, 23, 24, and 27. [Doc. 115, p. 2]. Federal Rule of Civil Procedure 56 provides that a party opposing summary judgment and arguing that a material fact is genuinely disputed must support that contention either by citing to materials in the record supporting a genuine factual dispute or by showing that the material in the record does not establish the absence of a genuine dispute. Where Mr. Cooper has failed to do so, the court considers those facts undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2).

[2] Mr. Cooper disputes "[w]hether Plaintiffs sent the insurance check to the correct location to payoff the Loan." [Doc. 115, p. 2, ¶ 3]. The FedEx receipt lists "14525 S. Millikan Way, Ste. 200" as the recipient address for the check. [Doc. 106-7]. However, the cover letter which accompanied the check lists "14523 SW MILLKAN WAY STE. 200" as the address. [Doc. 106-6]. In any event, Seterus employee Arica Craig received the check on January 13, 2017.

to send the Dentons monthly statements seeking ever increasing amounts of money and making no reference to the insurance proceeds. [Doc. 106, p. 5, ¶ 14].

On May 25, 2017, the Dentons' attorney, Dale Warner, sent a letter to Seterus stating the Dentons' "insurance company, Allstate, paid off the mortgage." [Doc. 106, p. 5, ¶ 15; Doc. 106-12, p. 3]. He further stated "[e]ven though the mortgage was paid off in January 2017, Seterus sent a delinquency notice indicating that no payments had been made for 290 days and that the payments for November and December 2016, January, February, March, and April, 2017 were all due even though the mortgage has been paid off." [*Id.*]. Mr. Warner enclosed a copy of the endorsed Allstate check. [*Id.*]. Seterus received the letter on May 30, 2017. [Doc. 106, p. 5, ¶ 16]. Seterus responded on June 14, 2017, stating "as we did not receive a Letter of Intent from your clients' [sic] stating that the hazard claims funds should be applied to pay the loan in full," Seterus was unable to apply the funds to the loan and the funds remained in the loan reserve account. [Doc. 106-12, p. 9].

On June 20, 2017, Mr. Warner sent a second letter to Seterus stating "I cannot understand why Seterus didn't apply the $41,031.18 to the loan once the letter of intent was received [on February 15, 2017] from the clients." [Doc. 106-15, p. 4]. Even if, by that time, an additional $343.00 in additional interest had accrued, Seterus "put the [$41,031.18] in a separate bank account and ha[s] not applied any of that money on the loan even though the client told you to" instead "of paying off their loan, all but $343.00." [*Id.*]. "It is absurd." [*Id.*]. Seterus received the second letter on July 10, 2017. [Doc. 106, p. 7, ¶ 20]. Seterus responded on July 18, 2017, stating:

> On February 15, 2017, we received your clients' Letter of Intent, which specified your clients' intention to apply the hazard claims funds to pay the loan in full. However, the Payoff Statement dated January 23, 2017 (copy enclosed) reflected that the hazard claims funds of $41,031.18 were no longer sufficient to pay the loan in full, and additional funds were required to pay the loan in full.

4

> We are unable to apply funds to bring the unpaid principal balance of the loan to $0.00 unless we have received sufficient funds to also satisfy all accrued interest, any assessed or estimated fees, and any deficiency in the escrow account.

[Doc. 106-15, p. 9]. On August 8, 2017, Mr. Warner sent a third letter to Seterus reiterating that the funds were issued by Allstate to Seterus "to pay off their mortgage." [Doc. 106-16, p. 3]. He continued:

> Seterus cashed this check, however; they didn't apply it to paying off their loan. Apparently Seterus said they couldn't apply it to the loan until they received a letter of intent from the client directing them to pay off the loan. Mr. and Mrs. Denton then promptly sent a letter to Seterus directly them to pay off the loan. On February 15, 2017, Seterus advised that the hazard fund claim fund was no longer sufficient to pay the loan in full. Rather than apply the $41,000 against the loan, they left it in escrow and continued racking up late payments, late charges, additional interest, and now threaten foreclosure."

[*Id.*]. Seterus received the third letter on August 15, 2017. [Doc. 106, p. 8, ¶ 24; Doc. 115, p. 2, ¶ 1]. Seterus responded on August 24, 2017, stating "[a]s you were previously and specifically advised, we are unable to apply funds to bring the unpaid principal balance of the loan to $0.00 unless we have received sufficient funds to also satisfy all accrued Interest, any assessed or estimated fees, and any deficiency in the escrow account." [Doc. 106-16, p. 7]. "Although we understand that you are not satisfied with the response we have provided because we are unable to provide the resolution you desire, this does not change the validity of our responses." [*Id.*].

## IV.  Analysis

The Dentons assert seven (7) claims against Mr. Cooper. [*See* Doc. 70]: a claim under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692–1692(p) (2018); a claim under the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C. § 2601–2617 (2018); a claim of interference with contract; a claim under the Uniform Commercial Code, 12A O.S. § 3-603

5

(2019); state law claims for trespass and breach of contract; and a claim of tortious breach of the implied covenant of good faith and fair dealing.

Mr. Cooper seeks summary judgment on four of these claims: the FDCPA claim (Count I), the breach of contract claim (Count IX), the trespass claim (Count VIII), and the bad faith claim (Count X). [*See* Doc. 103]. The Dentons seek summary judgment on their RESPA claim (Count III). [*See* Doc. 106]. The court considers each in turn.

A. *Federal Debt Collection Practices Act*

"The FDCPA excludes 'any person collecting or attempting to collect any debt . . . which was not in default at the time it was obtained by such person.'" *Obduskey v. Wells Fargo*, 879 F.3d 1216, 1219 (10th Cir. 2018) (quoting 15 U.S.C. § 1692(a)). Mr. Cooper argues the Dentons' FDCPA claim fails as a matter of law because the Dentons were not in default on June 1, 2016 when Mr. Cooper's predecessor, Seterus, began serving the loan. The Dentons agree. [Doc. 118, p. 6 ("Because the loan was current at that time, Mr. Cooper is correct that they do not meet the definition of 'debt collector.'")]. Accordingly, Mr. Cooper is entitled to summary judgment on plaintiffs' FDCPA claim, Count I of the Second Amended Complaint.

B. *Breach of Contract and Bad Faith*

The parties agree that the Dentons' claims for breach of contract and breach of the duty of good faith and fair dealing both require a contract between the Dentons and Seterus, Mr. Cooper's predecessor. In Mr. Cooper's view, because the Dentons "cannot demonstrate that they had any contract with Seterus," the Dentons' contractual claims fail. [*See* Doc. 103, pp. 7, 9]. Mr. Cooper argues that "Seterus merely serviced the [Dentons'] loan on behalf of Fannie Mae." [*Id.*, pp. 7-8]. "Seterus was not a party to the Note and Mortgage." [*Id.*, p. 9]. In response, the Dentons argue that a question of fact remains as to "whether Fannie Mae, Mr. Cooper or both are parties to the note and could therefore be liable for breach of contract." [Doc. 118, p. 8].

As a general principle, mortgage servicers are not parties to a mortgage contract. *See Bigsby v. Barclays Capital Real Estate, Inc.*, 391 F. Supp. 3d 336, 351 (S.D.N.Y. 2019) (collecting cases). Mortgage servicers generally collect monthly payments, keep tax and insurance impound accounts, pay property tax and insurance premiums when they come due, and pursue delinquent borrowers and foreclose if instructed by note holders. *See* 13 Thompson on Real Property, Thomas Editions § 104.10 (2020). Servicers handle the day-to-day administration of mortgages and are paid servicing fees in return by the note holder, which is typically a percentage of the principal debt. *Id.* The Dentons argue that, while case law supports "the proposition that being a mortgage servicer does not *automatically* make a servicer party to the note and mortgage, the[] cases do not stand for the proposition that a mortgage servicer that did not originate the note is never a party to the contract." [Doc. 118, p. 9]. The Dentons argue the general principle does not apply here because evidence exists that Fannie Mae assigned a portion of its rights and obligations to Seterus, making Seterus—and now Mr. Cooper—a party to the note.

The Dentons point to three pieces of evidence in support. First, the Dentons reference deposition testimony by Erich Ludwig, a manager of Fannie Mae's Service Support Center. [Doc. 118-2, p. 7]. The Dentons' counsel asked Ludwig "Does Fannie Mae have any obligations or responsibilities to the Dentons in the – as being a party to the note and mortgage?" [Doc. 118, p. 8; *see also* Doc. 118-2, p. 18]. Mr. Ludwig responded "We – we transfer the responsibility – the responsibility is given to the servicer to – to govern how that loan should be serviced. We don't have a relationship with the Dentons." [*Id.*]. In addition, the Dentons argue that "Seterus' notice of servicing transfer represents that the 'right to collect payments' under the note and mortgage was assigned, transferred or sold to Seterus." [Doc. 118, p. 8]. Accordingly, the Dentons contend, Seterus, and now Mr. Cooper, is a party to the Dentons' note. [*Id.*]. Third, the Dentons aver "[t]he

7

contract between Seterus and Fannie Mae provides further support for the proposition that Fannie Mae and Seterus are both parties to the Note." [Doc. 118, p. 8].

This evidence shows Fannie Mae contractually tasked Seterus with servicing the Dentons' loan, which included collecting payments on Fannie Mae's behalf. [Doc. 118-1]. Fannie Mae became the "Note Holder" in 1998. [Doc. 103, p. 2, ¶ 3; Doc. 118, p. 2, ¶ 3]. Under the terms of the note, the Dentons agreed to "pay principal and interest by making payments every month" to the Note Holder "or at a different place if required by the Note Holder." [Doc. 103-1, p. 2]. Fannie Mae designated that "different place" to be with Seterus. [*See* Doc. 118-4]. Seterus was contractually obligated to remit the Dentons' payments to Fannie Mae. [*See* Doc. 116-4, p. 12 ("Because these funds and assets are owned by Fannie Mae . . . the servicer, in its handling of these funds, is acting on behalf of and as a fiduciary for, Fannie Mae."]. Thus, the evidentiary materials before the court show that Seterus was entitled to *collect* the payments for Fannie Mae pursuant to the servicing contract. Mr. Ludwig's testimony, the notice of servicing transfer, and the contract between Fannie Mae and Seterus confirm this arrangement: Seterus had a "right to collect payments" from the Dentons because Fannie Mae contracted with Seterus to do so. This typical servicer arrangement counsels for the application of the general principle, not against it.

The Dentons to *In re Ocwen Loan Servicing, LLC Mortg. Serv. Lit.*, 491 F.3d 638 (7th Cir. 2007), in which the Seventh Circuit addressed whether state law breach of contract allegations against a servicer were preempted by the Office of Thrift Supervision's federal regulations governing the "[p]rocessing, origination, *servicing*, sale, or purchase of, or investment or participation in, mortgages." *Id.* at 645 (emphasis added). The court concluded the state law breach of contract allegations were not preempted: "If an original mortgagee can be sued under state law for breach of contract, so may the partial assignee if he violates the terms of the part of

8

the mortgage contract that has been assigned to him." *Id.* at 645. The *Ocwen* court noted "[a]t least so far as it bears on this case, servicing refers to the exercise of rights that are conferred by a partial assignment of a mortgage by the mortgagee. Instead of assigning the entire mortgage to Ocwen, the mortgagee in this case assigned some of the rights created by the mortgage contract— the 'servicing rights'—to Ocwen, which according to the complaint proceeded to violate its contractual obligations." *Id.* *Ocwen* addresses a narrow issue of preemption and does not undermine the general principle, addressed above, that mortgage servicers are not parties to a mortgage contract. In this case, the Dentons point to no evidence suggesting that Seterus, or Mr. Cooper as successor to Seterus, is a party to the note and mortgage.

Here, the Dentons have not raised a genuine issue of material fact as to whether Seterus, Mr. Cooper's predecessor, was an assignee or owner of the Dentons' note and mortgage. Accordingly, Mr. Cooper is entitled to summary judgment on Counts IX and X of the Second Amended Complaint.

C. *Trespass*

Mr. Cooper argues that the Dentons' "trespass claim fails because the evidence demonstrates they consented to the three reasonable entries onto the Property." [Doc. 103, p. 10]. The Dentons, by executing the mortgage, consented to "reasonable entries upon and inspections of the Property." [Doc. 103-2, p. 4]. The Dentons argue that consent "was extinguished when the full pay off amount was received by Mr. Cooper (then Seterus) and the Dentons' obligations under the note were discharged." [Doc. 118, p. 13]. And, they contend, even to the extent consent was not extinguished, "it is a jury question whether repeated, nearly monthly inspections of a home destroyed by fire . . . is reasonable." [*Id.*, p. 14]. In reply, Mr. Cooper states that an inspection came onto the Dentons' property three times. [*Id.*]. It does not address the Dentons' argument that their consent was extinguished by performance.

9

At least two genuine issues remain here. First, were the physical entries on to the property "reasonable"? *See Robison v. Litton Loan Servicing, L.P.*, Case No. 09-cv-02677-WYD-MJW, 2011 WL 1135369, at *6 (D. Colo. March 29, 2011) (denying summary judgment on trespass claim where "issues of fact remain as to whether [the servicer's] conduct was 'reasonable and appropriate' under the circumstances). The second issue is a mixed question of fact and law: did the Dentons' consent to "reasonable entries upon and inspections of the Property" terminate when Seterus received $41,031.18 from Allstate to pay off the Dentons' loan? Accordingly, Mr. Cooper's motion for summary judgment is denied as to Count VIII of the Second Amended Complaint.

D.  Real Estate Settlement Procedures Act

RESPA is a consumer protection statute enacted to regulate real estate settlement processes. 12 U.S.C. § 2601. "Under RESPA, a servicer of a 'federally related mortgage loan' may be liable for damages to a borrower if it fails to adequately respond to a qualified written request." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1145 (10th Cir. 2013) (quoting 12 U.S.C. § 2605(e)-(f)). A qualified written request (QWR) is "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Within thirty days of receipt of a QWR, the loan servicer generally must investigate and make appropriate corrections to the borrower's account, provide a written notification of any correction or an explanation why no correction was necessary, and provide a contact number for a representative. 12 U.S.C. § 2605(e)(2). If the servicer fails to appropriately respond, the borrower may recover actual damages resulting from the servicer's failure and "any

additional damages . . . in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1).

The Dentons argue they are entitled to summary judgment on their RESPA claim because the three letters from their lawyer to Seterus were QWRs and Seterus, upon receipt of the QWRs, failed to comply with its resulting obligations. Specifically, the Dentons argue Seterus failed to conduct a reasonable investigation, provided factually inaccurate responses, and (as to the second and third letters) did not explain why it could not pay down the note as requested. In response, Mr. Cooper argues (1) a question of fact exists regarding whether Seterus's responses to the QWRs were adequate because "Seterus correctly advised Plaintiffs that it had not received the proper written authorization" to apply the insurance funds to pay off the loan; (2) a question of fact exists as to whether RESPA applies because the Dentons have failed to allege any facts demonstrating their loan was a "federally related mortgage loan"; (3) there is no private right of action for violations of 12 C.F.R. § 1024.35; and (4) the third QWR was not sent to Seterus's designated address for receipt of such correspondence, and therefore cannot form the basis of a RESPA claim.

There is no genuine dispute as to whether the three letters from the Dentons' lawyer to Seterus constituted QWRs. All three letters were "written correspondence" which identified the name and account of the borrower. 12 U.S.C. § 2605(e)(1)(B)(i); [*see* Doc. 106-12, p. 3; Doc. 106-15, p. 3; Doc. 106-16, p. 3]. Moreover, they included "a statement of reasons for the belief of the borrower, to the extent applicable, that the account is in error." 12 U.S.C. § 2605(e)(1)(B)(ii). The first letter informed Seterus the Dentons' "insurance company, Allstate paid off the mortgage . . . [and] [e]ven though the mortgage was paid off in January, 2017, Seterus sent a delinquency notice" stating payments were "all due even though the mortgage has been paid off." [Doc. 106-12, p. 3]. The second letter stated "I cannot understand why Seterus didn't apply the $41,031.18

11

to the loan once the letter of intent was received from the clients on February 15, 2017." [Doc. 106-15, p. 4]. The third letter reiterated "[t]hese borrowers' house burned down on April 12, 2016." [Doc. 106-16, p. 3]. The letter went on:

> [The Dentons'] insurance company, Allstate, issued a check to pay off their mortgage in the amount of $41,031.18. Seterus cashed this check, however; they didn't apply it to paying off their loan. Apparently Seterus said they couldn't apply it to the loan until they received a letter of intent from the client directing them to pay off the loan. Mr. and Mrs. Denton then promptly sent a letter to Seterus directing them to pay off the loan. . . . Rather than apply the $41,000.00 against the loan, [Seterus] left it in escrow and continued racking up late payments, late charges, additional interest, and now threaten foreclosure.

[*Id.*]. All three letters state the reason the Dentons believed their account was in error: Seterus did not apply the insurance funds to pay off the mortgage even after it received the Dentons' statement of intent approximately one month later. To the extent additional interest had accrued at that point, the Dentons complained the insurance funds should have been used to pay down their loan. Accordingly, the letters satisfy the requirements of 12 U.S.C. § 2605(e)(1)(B).

RESPA provides that the servicer must, "after conducting an investigation, provide the borrower with a written explanation or clarification that includes (1) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and (2) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605(e)(2)(B). The RESPA implementing regulations, Regulation X, add that the investigation be "reasonable." 12 C.F.R. § 1024.35(e)(1)(B); *see also Lage v. Ocwen Loan Servicing, LLC*, 145 F. Supp. 3d 1172, 1189 (S.D. Fla. 2015) ("Additionally, Regulation X provides that the receipt of a 'notice of error' triggers the servicer's obligation to conduct a reasonable investigation."); *Wilson v. Bank of America, N.A.*, 48 F. Supp. 3d 787, 804 (E.D. Penn. 2014) (While earlier courts

concluded RESPA imposed "mere procedural obligations to investigate and respond, without any substantive obligation to ensure that the investigation was reasonable and the response was thorough[,] Regulation X . . . altered the landscape of those obligations. For example, in response to a Notice of Error, a servicer must now conduct a 'reasonable investigation.' The addition of the word 'reasonable' seemingly imposes a substantive obligation that is not satisfied by the mere procedural completion of some investigation followed by a written statement of reasons.").

The Dentons contend "[t]here is no evidence that any 'reasonable investigation' was conducted." [Doc. 106, p. 14]. The responses indicate Seterus did not receive a letter of intent to apply the Allstate funds to pay off the loan before February 15, 2017. [*See, e.g.* Doc. 106-12, p. 9]. However, the Dentons sent a fax to Seterus on January 11, 2017 stating "I am writing to give Allstate Roy Berg claim adjuster permission to receive Payoff Amount from you so they can cut Seterus payoff check and pay off mortgage since we no longer have a home to live in due to Fire." [Doc. 106-3, p. 3]. Skyler Moucha, who responded to the Dentons' QWRs on behalf of Seterus, testified he was not aware of the fax when he conducted the investigation. [*See* Doc. 106-13, p. 16]. He explained "[p]ossibly [the fax] was misfiled initially and discovered after the fact. Possibly it was mislabeled as a different type of document or it had not made it to the third-party imaging software site when I was researching the letter," six months later. [*Id.*]. He testified that, had he been aware of the fax when he was responding to the QWRs, the results "probably would have been" different. [*Id.*, p. 17]. "Based off of this information here, it appears to have been enough to apply the . . . funds to the loan" to pay it off. [*Id.*, p. 18].

At this stage, the evidence and reasonable inferences drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *See Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004). Though Mr. Moucha agreed in his deposition that "[a] reasonable

13

investigation would have included searching for faxes received, [and] any correspondence received," and that, on reading the January 11 fax, it seemed clear to him that the Dentons wanted Seterus to apply the Allstate insurance proceeds to pay off their loan, he testified that he had in fact researched the matter prior to his June 14, 2017 response letter. [*Id.*, pp. 15-16, 20]. In addition, the QWRs did not put Mr. Moucha on notice of the January 11 fax. Thus, Mr. Moucha conducted an investigation but did not find the January 11 fax. However, a genuine issue of material fact remains as to whether his investigation was reasonable. *See Wilson*, 48 F. Supp. 3d at 804 (Regulation X imposes a substantive obligation that an investigation be reasonable). Accordingly, genuine issues of material fact exist with respect to whether Seterus conducted the requisite reasonable investigation upon receiving the Dentons' QWRs.

The Dentons' also argue Seterus's responses were insufficient because they were factually inaccurate. The responses indicate the Allstate funds were received on January 19, 2017. [*See, e.g.* Doc. 106-12, p. 9]. However, the FedEx shipment information report indicates the package containing the Allstate check was delivered on January 13, 2017. [Doc. 106-7, p. 2]. Arica Craig, Seterus employee, confirmed during her deposition that she signed for the Fed Ex package and that she had no reason to dispute she received it on January 13. [Doc. 106-8, pp. 6-7]. As noted above, the responses also indicate that Seterus did not receive a letter of intent to apply the funds to pay off the loan until February 15, despite receipt of the January 11 fax. Mr. Cooper points to testimony by Edward Hyne. Mr. Hyne, a Mr. Cooper employee, testified the fax "doesn't authorize the use of the funds to – from the restricted escrow account to pay off the loan." [Doc. 106-2, p. 8]. In Mr. Cooper's view, "[t]he purpose of this fax was . . . to provide a payoff quote to Roy Berg." [*Id.*, p. 9]. And while it "conveys [the Dentons'] desire to pay off the loan" the Dentons did not "specifically give instructions to use the loss draft funds to pay off the loan." [*Id.*, pp. 8,

14

10]. Mr. Cooper argues "Plaintiffs were required to use a specific form . . . to give Seterus written notice of their intent to use the insurance proceeds to pay off the loan" which they did not do until February 15, 2017. [Doc. 115, p. 7]. Though a reasonable jury may ultimately find Mr. Hyne's interpretation unreasonable, RESPA merely requires the servicer's response include "a statement of the reasons for which the *servicer* believes the account of the borrower is correct as determined by the *servicer*." 12 U.S.C. § 2605(e)(2)(B)(i).

Finally, the Dentons argue Seterus's responses to the second and third QWRs did not explain why Seterus could not pay down the note, as opposed to paying it off in full. "Seterus failed to provide a substantive response to this question in the response and thereby failed to comply with RESPA." [Doc. 106, p. 14]. Mr. Cooper argues that the response did address this issue by explaining "it was not authorized to use the funds to pay down the loan where they were not sufficient to pay off the loan in full." [Doc. 115, p. 10].

Mr. Moucha explained in his deposition that "[his] understanding per Seterus's hazard insurance department and transaction processing department was that because the funds were requested to be applied in a specific way, that is to pay off the loan" in the February 15 letter of intent, "they were unable to apply the funds to . . . pay down the loan." [Doc. 106-13, p. 21]. However, he confirmed that his third response "did not address the issue raised by Mr. Warner of why Seterus was not using the funds to pay down the loan." [Doc. 106-13, p. 24]. The court agrees.

The second and third responses explain why Seterus believed it could not use the Allstate funds to pay *off* the loan: the funds were short due to accrued interest. The responses do not, however, explain why the funds could not have been used to pay *down* the loan. Mr. Warner, in the second QWR, stated on behalf of the Dentons that the funds should have been used to "pay[] off their loan, all but $343.00." [Doc. 106-15, p. 4]. "You put the money in a separate bank

15

account and have not applied any of that money on the loan even though the client told you to." [*Id.*]. While Mr. Warner does not use the magic words "pay down," it is clear that he is inquiring why Seterus does not apply the Allstate funds to the Dentons' loan and "solicit the $343.00 additional interest." [*Id.*, p. 3; *see also* Doc. 106-16, p. 3 ("Rather than apply the [funds] against the loan, they left it in escrow and continued racking up late payments, late charges, additional interest, and now threaten foreclosure.")]; *see also* 12 C.F.R. § 1024.35(g)(1)(ii) ("To the extent a servicer can reasonably identify a valid assertion of an error in a notice of error that is otherwise overly broad, the servicer shall comply [with RESPA's procedures]."). Even if Seterus had an explanation—that it only had authorization to use the funds to pay off the loan rather than pay it down—it failed to explain that in its second and third responses. On this issue, there is no genuine dispute.

Mr. Cooper argues the Dentons' summary judgment motion fails because "they do not allege any facts to demonstrate that RESPA even applies here." [Doc. 115, p. 12]. RESPA generally applies to "federally related mortgage loans." 12 C.F.R. § 1024.5(a). "This term includes almost every loan secured by a lien on residential real property in the United States designed principally for one-to-four family occupancy. The law covers almost every mortgage lender." 1 The RESPA Manual § 4.01 (2019). Mr. Cooper, as the nonmoving party, "must do more than simply show that there is some metaphysical doubt as to the material facts" to defeat summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Mr. Cooper has failed to show there is a *genuine* issue of material fact as to whether RESPA applies. *See Matsushita*, 475 U.S. at 587 ("In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'").

16

Mr. Cooper next argues summary judgment should be denied as to the third QWR because it was sent to the Transaction Processing Department, rather than the designated address for receipt of correspondence, including QWRs. "[A] servicer's receipt of a QWR at the designated address is required to trigger RESPA duties and liability under § 2605." *Berneike*, 708 F.3d at 1147. The Dentons argue that "Mr. Cooper fails to establish that it provided notice that the [designated address] *must* be used." [Doc. 120, p. 2]; *see* 12 C.F.R. § 1024.36(b). Under RESPA's implementing regulations, a servicer may establish a specific address for receiving QWRs by sending written notice to the borrower stating that the borrower must use the established address. 12 C.F.R. §§ 1024.35(a), (c), 1024.36(a), (b). "According to the Official Bureau Interpretations of Regulation X, the notice of an exclusive QWR address 'is subject to the clear and conspicuous requirement' of 12 C.F.R § 1024.32(a)(1)." *Warren v. Green Tree Servicing, LLC*, 663 F. App'x 703, 708 (10th. Cir. 2016) (unpublished). Mr. Cooper does not point the court to any particular notice of an exclusive QWR address and, upon review of the record, the court finds none. Seterus's Transfer of Servicing Notice explains the Dentons' rights under Section 6 of RESPA, including the right to send a "qualified written request," but does not expressly designate any address to which the Dentons' must send QWRs. *Compare* [Doc. 118-4, p. 3] *with Warren*, 663 F. App'x at 708 ([T]he welcome letter . . . contained the express designation of Box 6176 as the address to which [the borrower] must send any QWRs."). Further, the responses to the Dentons' QWRs merely contained a header entitled "Correspondence, Inquiries, and Notices," and the Hartford P.O. Box address. [*See, e.g.* Doc. 106-12, p. 9]. To establish a QWR address, a loan servicer "may, by written notice provided to a borrower, establish an address that a borrower must use to submit a notice of error . . . the notice shall include a statement that the borrower must use the established address to assert an error," as well as for requests for information. 12 C.F.R. §§ 1024.35(c),

17

1024.36(b).  Here, the responses contained no such notice.  This is not a "clear and conspicuous" designation for QWRs.  Accordingly, there is no genuine dispute of material fact as to whether the response letters designated the Hartford P.O. Box for QWRs. They did not.  *See Warren*, 663 F. App'x at 709 ("The acknowledgement letters only referred to 'questions or comments.' We therefore conclude the acknowledgment letters indisputably did not establish [that address] as a QWR address.").

Mr. Cooper argues 12 C.F.R. § 1024.35 does not provide a private right of action.  However, plaintiffs' RESPA claim is brought pursuant to 12 U.S.C. § 2605, as clarified by the implementing regulations found at 12 C.F.R. Part 1024.  Section 2605 contains a private right of action for failure to respond adequately to the borrower's notice of error.  12 U.S.C. § 2605(e)(2), (f); *accord Berneike*, 708 F.3d 1141, 1145 (10th Cir. 2013) ("Under RESPA, a servicer of a 'federally related mortgage loan' may be liable for damages *to a borrower* if it fails to adequately respond to a [QWR]."); *see also* Mortgage Servicing Rules under RESPA (Regulation X), 2013 WL 525347, at *10714 n. 64 (Feb. 14, 2013) ("The Bureau notes that regulations established pursuant to section 6 of RESPA are subject to section 6(f) of RESPA, which provides borrowers a private right of action to enforce such regulations.").  Mr. Cooper's argument to the contrary fails.

Accordingly, the Dentons are entitled to partial summary judgment on their RESPA claim because Seterus's responses to the second and third QWRs were inadequate as a matter of law.

## V. Conclusion

WHEREFORE, defendant Mr. Cooper's motion for partial summary judgment [Doc. 103] is granted as to Counts I, IX, and X of the Second Amended Complaint and is otherwise denied. Plaintiffs Terry and Cynthia Denton's motion for partial summary judgment [Doc. 106] is granted

as to Count III of the Second Amended Complaint insofar as the responses to the second and third QWRs were inadequate as a matter of law.  The motion is otherwise denied.

    IT IS SO ORDERED this 20th day of April, 2020.

*[signature]*
GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE