IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRY L. DENTON and CYNTHIA R. DENTON,<br><br>      Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC, D/B/A MR. COOPER AS SUCCESSOR TO SETERUS, INC. and FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>      Defendants. | Case No. 18-CV-241-GKF-JFJ |

**OPINION AND ORDER**

Before the court is the Motion Pursuant to Fed. R. Civ. P. 56 for Summary Judgment [Doc. 105] of defendant Federal National Mortgage Association (Fannie Mae). For the reasons set forth below, the motion is granted as to Counts II and VI of the Second Amended Complaint and punitive damages sought pursuant to 23 O.S. § 9.1. The motion is otherwise denied.

**I. Background and Procedural History**

This lawsuit arises out of the failure of a mortgage loan servicer to apply an insurance settlement check to pay off the Dentons' promissory note and release the mortgage. The Dentons filed suit on March 15, 2018 in Oklahoma state court against Bank of America, N.A. (BANA) and Seterus, Inc. BANA then removed the action to this court.

Upon removal, Seterus and BANA filed motions to dismiss for failure to state a claim. The Dentons filed their First Amended Complaint, mooting the two motions to dismiss. Seterus and BANA then filed motions to dismiss the First Amended Complaint. The court granted BANA's motion and terminated BANA as a party, and granted Seterus's motion to dismiss counts II, V, and

VI. The Dentons then requested leave to file a Second Amended Complaint substituting Nationstar Mortgage LLC, d/b/a Mr. Cooper (Mr. Cooper) as successor to Seterus and adding Fannie Mae as a defendant. The court granted the motion and the Dentons filed their Second Amended Complaint on June 3, 2019. On September 19, 2019, the Dentons requested leave to file a Third Amended Complaint, which the court denied because the request was filed four months beyond the deadline and the proposed amendment was based on facts the Dentons previously knew or should have known.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (quoting *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002)). "A 'material' fact is one 'that might affect the outcome of the suit under the governing law, . . . and a 'genuine' issue is one for which 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation omitted).

## III. Undisputed Material Facts

On August 28, 1998, Nationsbanc Mortgage Corporation extended a $59,850 home loan to the Dentons. The loan was evidenced by a promissory note and secured by a mortgage on the real estate located at 2205 North Beverly Drive, Sapulpa, Oklahoma. Fannie Mae obtained ownership of the loan in 1998. [Doc. 105, p. 6, ¶ 2; Doc. 116, p. 7, ¶ 2].

Seterus, Inc. began servicing the loan effective June 1, 2016. [Doc. 105, p. 6, ¶ 3; Doc. 116, p. 7, ¶ 3]. Seterus serviced the loan for, and on behalf of Fannie Mae, under a Mortgage Selling and Servicing Contract (Servicing Contract). [Doc. 105, p. 6, ¶ 4; Doc. 116, p. 8, ¶ 4]. Defendant Mr. Cooper, successor to Seterus, was also subject to the Servicing Contract. [Doc. 105, p. 6, ¶ 5; Doc. 105-3, p. 71, lines 6-23; Doc. 116, p. 8, ¶ 5]. The Servicing Contract required Seterus, and subsequently Mr. Cooper, to service the loan "according to the provisions in [Fannie Mae's] Guides that are in effect on the date of this Contract or as amended in the future." [Doc. 105, p. 6, ¶ 6; Doc. 116, p. 8, ¶ 6]. Where the Servicing Guide is silent, the servicer has discretion to service the loan consistent with applicable law and the Servicing Guide. [Doc. 105, p. 7, ¶ 10; Doc. 116, p. 11, ¶ 10].

## IV. Analysis

The Dentons assert six causes of action against Fannie Mae. First, the Dentons assert a claim under the Truth in Lending Act (TILA), 15 U.S.C. § 1601-1667f (Count II). Second, Count VI alleges a violation of 46 Okla. Stat. § 15 for failure to release the Dentons' mortgage. Third, Count VII alleges a violation of the Uniform Commercial Code's section on tender of payment, 12A O.S. § 3-603 (2019). Fourth and fifth, plaintiffs assert state law claims for trespass (Count VIII) and breach of contract (Count IX). Finally, plaintiffs allege Fannie Mae has committed a tortious breach of the implied covenant of good faith and fair dealing (Count X). Fannie Mae moves for summary judgment on all claims.

### A. The Merrill Doctrine

Fannie Mae argues Counts II, VII, IX, and X fail because, even to the extent Seterus, or Mr. Cooper as Seterus's successor, was acting as Fannie Mae's agent, "under the *Merrill* doctrine Fannie Mae is not liable for its agents' unauthorized actions." [Doc. 105, p. 10]. The Dentons contend that the *Merrill* doctrine does not shield Fannie Mae from liability and, at least in the Tenth

Circuit, the *Merrill* doctrine does not extend past "estoppel for deceit, fraud or negligent misrepresentation by a government agent." [*See* Doc. 116, p. 17].

"Modern estoppel cases begin with *Federal Crop Ins. Co. v. Merrill*, 332 U.S. 380 (1947), the leading case expressing the traditional limitations of equitable estoppel against the government." *Penny v. Giuffrida*, 897 F.2d 1543, 1546 (10th Cir. 1990). "In *Merrill*, two farmers relied on a government agent's promise that their entire wheat crop would be federally insured by the Federal Crop Insurance Corporation (FCIC)." *Id.* However, unknown to the farmers and the agent, FCIC regulations "prohibited insurance on a certain portion of their crop. When drought destroyed the crop, the FCIC denied the farmers' claim for insurance." *Id.* The Supreme Court, while acknowledging that the requirements for private estoppel were satisfied, explained:

> It is too late in the day to urge that the Government is just another private litigant, for purposes of charging it with liability, whenever it takes over a business theretofore conducted by a private enterprise or engages in competition with private ventures. Government is not partly public or partly private, depending upon the governmental pedigree of the type of a particular activity or the manner in which the Government conducts it. The Government may carry on its operations through conventional executive agencies or through corporate forms especially created for defined ends. Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.

*Merrill*, 332 U.S. 380, 383-84 (1947). In its opinion, the Supreme Court noted "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Id.* at 385. "From this seed, a principle sprouted: the federal government cannot be bound by the unauthorized acts of its agents." *Faiella v. Federal National Mortgage Ass'n*, 928 F.3d 141, 143 (1st Cir. 2019) (citing *Penny*, 897 F.2d at 1546).

Fannie Mae principally relies on *Faiella v. Federal National Mortgage Ass'n*, 928 F.3d 141 (1st Cir. 2019), for the proposition that Fannie Mae enjoys the protection of the *Merrill* doctrine. In *Faiella*, the First Circuit was "present[ed] a question of first impression at the federal appellate level: does the protective carapace of the *Merrill* doctrine extend to the Federal National Mortgage Association (Fannie Mae)?" *Id.* at 143. The First Circuit concluded that it did.

There, as here, Fannie Mae was the assignee of a home mortgage loan. The borrower brought suit against Fannie Mae and the third-party servicer, ultimately alleging violations of several federal and state debt collection and consumer protection laws and regulations, as well as common-law tort claims for deceit and negligent misrepresentation. *Id.* at 144. "Fannie Mae successfully moved to dismiss the statutory claims on various grounds. The dismissal of these claims . . . left only the appellant's common-law claims alleging that Fannie Mae was vicariously liable for deceit and negligent misrepresentation by [the servicer's] employees." *Id.* at 144-45.

The First Circuit determined the key inquiry as to whether the *Merrill* doctrine applied is whether Fannie Mae is a "federal instrumentality." The court addressed two arguments raised by the borrower's briefing: (1) because Fannie Mae is not a federal instrumentality for the purposes of sovereign immunity or the Federal Tort Claims act, that status is precluded in the *Merrill* context and (2) Fannie Mae, as a shareholder-owned corporation, should not receive the protections of the *Merrill* doctrine. *Id.* The court reasoned "[f]irst, the fact that an entity is deemed not to be a federal instrumentality for a particular purpose for a particular purpose does not signify that the entity should not be deemed to be a federal instrumentality for some other purpose." *Id.* "Second, the question of instrumentality status is not determined either by Fannie Mae's corporate form or by whether Fannie Mae serves a 'proprietary' function." *Id.* (citing *Merrill*, 332 U.S. at 384). Instead, the First Circuit concluded, the inquiry "hinges on whether Congress created Fannie Mae

to serve an important governmental objective." *Id.* The court looked to "congressional intent as embodied in Fannie Mae's governing statute" and the Seventh Circuit's decision in *Mendrala* concluding the Federal Home Loan Mortgage Corporation (Freddie Mac) is a federal instrumentality for purposes of the *Merrill* doctrine. *Id.* (citing *Mendrala v. Crown Mortg. Co.*, 955 F.2d 1132 (7th Cir. 1992)). Because "like Freddie Mac, Fannie Mae serves an important governmental objective: 'to maintain the secondary mortgage market and assist in meeting low- and moderate-income housing goals," the First Circuit held that Fannie Mae is a federal instrumentality for purposes of the *Merrill* doctrine. *Id.* at 149. Accordingly, it "cannot be held liable for the unauthorized acts of its agents." *Id.*

The First Circuit's opinion directly addresses, and rejects, the Dentons' argument that Fannie Mae is not a "federal instrumentality" for purposes of the *Merrill* doctrine. Moreover, the First Circuit rejected the borrower's argument that the *Merrill* doctrine should only be used in estoppel cases. The court agrees with the First Circuit's reasoning. However, the Dentons raise an additional argument: the *Merrill* doctrine does not apply because Fannie Mae authorized the acts of its agent here. Under traditional concepts of agency or contract law, "the government is ordinarily bound by the authorized acts of its agents." *Penny*, 897 F.2d at 1546. Such authorization must be express or implied. *See United States v. Lilly*, 810 F.3d 1205, 1210-11 (10th Cir. 2016).

In Fannie Mae's view, "Plaintiffs must plead and prove that Fannie Mae actually authorized Seterus and/or Mr. Cooper's [as successor to Seterus] alleged violations of law." [Doc. 105, p. 12]. It argues the Dentons cannot do so because "Fannie Mae's servicing guidelines expressly require its servicers to comply with all federal, state, and local laws." [*Id.*]. Thus, it contends, to the extent its agent acted unlawfully, it exceeded the scope of its authority. However, the scope of an agent's authority is broader than Fannie Mae suggests.

"An agent acts with actual authority if it 'reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.'" *1-800 Contacts*, 722 F.3d at 1251 (quoting Restatement (Third) of Agency, § 2.01)). The question here is whether the Dentons have presented sufficient evidence that Seterus reasonably believed "the principal's grant of actual authority encompassed the act in question"? *Id.* ("Lack of actual authority is established by showing either that the agent did not believe, or could not reasonably have believed that the principal's grant of actual authority encompassed the act in question." (quoting Restatement (Third) of Agency, § 2.02 cmt. e)). Seterus employee Jessica Ludlow testified she believed Seterus "followed the rules of the mortgage instrument and the loan agreement along with Fannie Mae guidelines." [Doc. 116-8, p. 9, lines 16-18]. When asked "[w]hat authority would Seterus act on in 2017 to insist . . . that borrowers" use a specific form to authorize the use of insurance proceeds to pay off a loan?" Mr. Cooper's employee, Edward Hyne, testified "[A]s the servicer of the loan, [Seterus] can require whatever is necessary for them to process the loan." [Doc. 105-4, p. 4, lines 2-6]. Fannie Mae, in its statement of undisputed facts, states the "Servicing Guide is silent regarding requirement for establishing borrower intent with respect to using insurance proceeds to pay off a loan" and "where the Servicing Guide is silent, the servicer has discretion to take whatever action is necessary to service the Loan consistent with applicable law and the Servicing Guide." [Doc. 105, p. 7]. Accordingly, a genuine issue of material fact exists: whether Seterus acted with actual authority as an agent of Fannie Mae when it declined to apply the insurance proceeds to pay off the note absent a specific form and, once the form was received, declined to apply the funds and release the mortgage due to accrued charges in excess of the insurance proceeds.

B. *Agency Relationship*

Fannie Mae next argues that the Dentons cannot meet their burden of demonstrating an agency relationship between Fannie Mae and Seterus or Mr. Cooper. Specifically, Fannie Mae argues "the evidence of actual conduct demonstrates Fannie Mae did not control Seterus or Mr. Cooper." [*Id.*, p. 16]. "Seterus never sought guidance from Fannie Mae regarding the insurance funds" and "Fannie Mae never provided any direction to Seterus regarding the insurance funds." [*Id.*]. "Further, the Servicing Guide does not specify any practices or procedures the servicer should apply to establish borrower intent with respect to using insurance proceeds to pay off a loan." [*Id.*]. In response, the Dentons first point to the Servicing Guide's provision denominating Seterus as Fannie Mae's fiduciary. Moreover, they argue, the Servicing Contract requires Seterus, and Mr. Cooper as its successor, to follow all written guidelines and all reasonable instructions from Fannie Mae. They argue Seterus, now Mr. Cooper, is subject to termination with or without cause and is subject to review of its actions by Fannie Mae. In addition, the Dentons point to a Limited Power of Attorney, by which Fannie Mae appointed Seterus, and Mr. Cooper as Seterus's successor, as Fannie Mae's attorney-in-fact "to execute, endorse, and acknowledge all documents customarily and reasonably necessary and appropriate for . . . the full satisfaction or release of a mortgage." [Doc. 116, p. 24; Doc. 116-9, p. 3].

"Actors' designations of their relationships – such as a contractual term providing for an independent-contractor relationship – are not determinative of the relationships' legal status." *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1235 (D.N.M. 2019) (citing *1-800 Contacts*, 722 F.3d at 1251). Accordingly, the statement in Fannie Mae's Servicing Guide that "[t]he servicer services Fannie Mae mortgage loans as an independent contractor and not as an agent, assignee, or representative of Fannie Mae" is not determinative. [*See* Doc. 105-6, p. 6].

8

"Agency is the fiduciary relationship that arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2005) (hereinafter, "Restatement"); *see also Surety Bail Bondsmen of Oklahoma, Inc. v. Insurance Com'r*, 243 P. 3d 1177, 1185 (Okla. 2010) ("An agency relationship generally exists if two parties agree one is to act for the other."). "An essential element of agency is the principal's right to control the agent's actions." *Hollingsworth v. Perry*, 570 U.S. 693, 713 (2013) (quoting Restatement § 1.01, Comment *f*). "The requirement that an agent be subject to the principal's control assumes that the principal is capable of providing instructions to the agent and of terminating the agent's authority." Restatement § 1.01, Comment *c*. While Fannie Mae focuses on its ability to control the specific actions Seterus took with respect to applying the insurance funds, "a person may be an agent although the principal lacks the right to control the full range of the agent's activities, how the agent uses time, or the agent's exercise of professional judgment." *Id.* Accordingly, the agency inquiry focuses on the entire relationship between the principal and the agent—not simply the acts in question.

Here, the Servicing Contract provides "[a]ny mortgage serviced under this Contract, which we own or in which we have purchased a participation interest, **must** be serviced by the Lender according to the provisions in our Guides that are in effect on the date of this Contract or as amended in the future." [Doc. 116-2, p. 12]. The Servicing Guide lays out Fannie Mae's instructions to servicers on how to process funds, manage delinquencies, determine minimum insurance coverage amounts, and disburse insurance loss proceeds, among other things. [*See generally*, Doc. 116-4]; *see also Berezovsky v. Moniz*, 869 F.3d 923, 933 (9th Cir. 2017) (agency relationship existed between Freddie Mac and loan servicer). "The Servicing Guide explains how

to become an approved Fannie Mae servicer and the policies and requirements required to perform normal and routine servicing matter [sic]." [Doc. 116-4, p. 5]. To ensure compliance with these instructions, Fannie Mae regularly monitors each servicer's performance. [Doc. 116-4, p. 9]. "In order to determine the servicer's compliance with its servicing duties under the Lender Contract, Fannie Mae measures the servicer's performance utilizing various performance metrics." [Doc. 116-4, pp. 7-8]. "Unacceptable performance . . . may result in a performance improvement plan." [*Id.*, p. 9]. "Performance improvement plans may require the servicer to take actions and/or meet targets within defined time frames in order to remedy servicing deficiencies." [*Id.*, p. 10]. In addition, "Fannie Mae may terminate the servicer's contractual right to service without cause." [Doc. 116-4, p. 11]. Accordingly, the Dentons have submitted evidence that Fannie Mae provides instructions to Seterus (and Mr. Cooper as its successor) and can terminate the relationship—both indicia of an agency relationship.[1]

Moreover, "[i]f the relationship between two persons is one of agency . . ., the agent owes a fiduciary obligation to the principal." *Hollingsworth*, 570 U.S. at 713 (quoting Restatement § 1.01, Comment *e*). Here, the Servicing Guide explicitly identifies the servicer's fiduciary responsibilities to Fannie Mae. "The servicer's authorization to receive, handle, or dispose of funds representing mortgage loan payments . . . is limited to those servicing actions that are expressly authorized in the Servicing Guide or in the Lender Contract." [Doc. 116-4, p. 12].

---

[1] This is so for the Dentons' federal and state law claims. "The Oklahoma Supreme Court has noted . . . 'the essence of an agency relation is the right of the principal to give directions that the agent is under a duty to obey as long as he remains the agent. The agent should act in the principal's interest and at his control.'" *ATS Group, LLC v. Legacy Tank and Industrial Services LLC*, 407 F. Supp. 3d 1186, 1193 (W.D. Okla. 2019) (citing *Enter. Mgmt. Consultants, Inc. v. State ex rel. Okla. Tax Comm'n*, 768 P.2d 359, 362 n. 13 (Okla. 1988)). Here, the Dentons point to evidence which would show Fannie Mae provided Seterus directions which Seterus had to obey and acted under Fannie Mae's control.

"Because these funds and assets are owned by Fannie Mae and other parties (such as the borrower, a participating seller/servicer, or an MBS holder, if applicable), the servicer, in its handling of these funds, **is acting on behalf of and as a fiduciary for, Fannie Mae and other parties**, as their respective interests may appear; the servicer is not acting as a debtor of Fannie Mae."  [*Id.*].

For the reasons set forth above, the court finds and concludes that a genuine issue of material fact exists as to whether Fannie Mae and Seterus had a principal/agent relationship wherein Seterus acted on Fannie Mae's behalf and subject to Fannie Mae's control.

C. *Penalties Precluded*

Fannie Mae contends that the "Housing and Economic Recovery Act of 2008 (HERA) bars Plaintiffs' requested relief for statutory damages and attorneys' fees under each claim." [Doc. 105, p. 17]. The Dentons respond that HERA merely provides protection for the Federal Housing Finance Agency (FHFA), not Fannie Mae. [Doc. 116, p. 24]. They also argue that, to the extent the penalty bar applies, "attorney fees and statutory damages under TILA are not in the nature of a penalty." [*Id.*, p. 25].

Under HERA, "[t]he Agency," *i.e.* the FHFA, "shall not be liable for any amounts in the nature of penalties or fines." 12 U.S.C. § 4617(j)(4). This provision applies "with respect to the [FHFA] in any case in which the Agency is acting as a conservator or a receiver." 12 U.S.C. § 4617(j)(1). "On its face, [this] provision makes clear that this subsection applies to 'any case' in which the Agency serves as conservator, without limitation." *Berezovsky*, 869 F.3d at 928 (citing 12 U.S.C. § 4617(j)(1)). Accordingly, "[t]he Agency's conservatorship assets are shielded from certain adverse actions as spelled out by statute." *Berezovsky*, 869 F.3d at 927 (citing 12 U.S.C. § 4617).

The FHFA is currently acting as Fannie Mae's conservator. "On September 6, 2008, FHFA's Director placed both Fannie Mae and Freddie Mac into conservatorship" pursuant to HERA. *Perry Captial LLC v. Mnuchin*, 864 F.3d 591, 600 (D.C. Cir. 2017). As Fannie Mae's conservator, the FHFA acquired Fannie Mae's "rights, titles, powers, and privileges . . . with respect to [its] assets" for the life of the conservatorship. 12 U.S.C. § 4617(b)(2)(A)(i). Accordingly, HERA's statutory bar against penalties and fines applies here. Fannie Mae, due to its status in conservatorship, cannot be liable for any amounts in the nature of penalties or fines. *Nevada v. Countrywide Home Loans Servicing, LP*, 812 F. Supp. 2d 1211, 1218 (D. Nev. 2011) ("[W]hile under the conservatorship with the FHFA, Fannie Mae is statutorily exempt from taxes, penalties, and fines to the same extent that the FHFA is."); *accord FHFA v. City of Chicago*, 962 F. Supp. 2d 1044, 1064 (N.D. Ill. 2013) ("FHFA, as conservator, stepped into the shoes of Fannie Mae and Freddie Mac." Accordingly, contentions that fines and penalties assessed against Fannie Mae are not barred by section 4617(j)(4) because it only protects FHFA are "meritless."). The Dentons cite no case law to the contrary.

The Dentons "do not dispute that the [punitive] damages [sought] pursuant to 23 O.S. § 9.1 are punitive in nature and are a penalty" and "that the plain language of 46 O.S. § 15 states the damages are a penalty." [Doc. 116, p. 25 n. 4]. Fannie Mae cannot be held liable for penal amounts under these statutes.

The Dentons do challenge, however, whether attorneys' fees and statutory damages under TILA are in the nature of penalties or fines. Many courts have noted that TILA should be construed liberally to effect its remedial purposes. *See, e.g. Williams v. Pub. Fin. Corp.*, 598 F.2d 349, 355 (5th Cir. 1979); *Ellis v. GMAC*, 160 F.3d 703, 707 (11th Cir. 1998) (TILA is "a consumer protection statute which . . . is remedial in nature and therefore must be construed liberally in order to best

12

serve Congress' intent."). However, courts also characterize TILA's damage provision as penal. *See Mourning v. Family Pub. Service, Inc.*, 411 U.S. 356, 376 (1973) (describing 15 U.S.C. § 1640(a) as a "civil penalty provision"). The Ninth Circuit has concluded that "an examination of [TILA] and interpretive case law indicates that it ultimately serves the dual purpose of providing a remedy for harm to the monetary interests of individuals while serving to deter socially undesirable lending practices by penalizing those who violate its provisions." *Riggs v. Government Emp. Financial Corp.*, 623 F.2d 68, 72 (9th Cir. 1980). This court agrees.

TILA authorizes the "sum" of four types of damages. Three of these are remedial. First, the injured party may recover actual damages. 15 U.S.C. § 1640(a)(1). *See Birdsall v. Coolidge*, 93 U.S. 64 (1876) ("Compensatory damages and actual damages mean the same thing; that is, that the damages shall be the result of the injury alleged and proved, and that the amount awarded shall be precisely commensurate with the injury suffered, neither more nor less, whether the injury be to the person or estate of the complaining party."). Second, the injured party may recover litigation costs, including reasonable attorney's fees. 15 U.S.C. § 1640(a)(3). "The purpose behind granting attorney's fees is to make a litigant whole and to facilitate private enforcement of the Truth in Lending Act." *Hannon v. Sec. Nat. Bank*, 537 F.2d 327, 328 (9th Cir. 1976). Third, if the alleged violator failed to comply with 15 U.S.C. § 1639, the injured party may recover the finance charges and fees he paid. 15 U.S.C. § 1640(a)(4). This subsection intends to make those injured whole. In contrast, the injured party may also recover statutory damages in excess of actual damages. 15 U.S.C. § 1640(a)(2). "The Supreme Court recognized long ago that statutes such as section 1640(a)(2)(A) can be readily characterized as penal against the violator but remedial as to the victim." *Riggs*, 623 F.2d at 72. Because statutory damages in excess of actual damages would be penal against Fannie Mae, they are barred by HERA.

*D. TILA*

Fannie Mae offers an additional reason why it cannot be liable for damages under TILA: it "is not a creditor and only creditors may be liable for Plaintiffs' alleged TILA violations." [Doc. 105, p. 24]. The Dentons argue Fannie Mae's reading of TILA is too narrow and must be rejected.

Under TILA, "any creditor" may be subject to civil liability for failure to comply with certain requirements. 15 U.S.C. § 1640(a). If Fannie Mae is not a creditor, as defined by TILA and Regulation Z, "TILA is inapplicable." *Robey-Harcourt v. BenCorp Financial Co., Inc.*, 326 F.3d 1140, 1142 (10th Cir. 2003). A "creditor" is "the person to whom the debt arising from the consumer credit transaction is **initially** payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g) (emphasis added); *see also* 12 C.F.R. § 1026.2(a)(17)(i); *accord Robey-Harcourt*, 326 F.3d at 1142 n. 2.

Here, the Dentons' loan was initially payable to NationsBanc Mortgage Corporation, not Fannie Mae. [Doc. 105, p. 6, ¶ 1; Doc. 116, p. 7, ¶ 1]. Fannie Mae obtained ownership of the loan in 1998. [Doc. 105, p. 6, ¶ 2; Doc. 116, p. 7, ¶ 2]. Accordingly, Fannie Mae does not meet the definition of "creditor." *Vincent v. The Money Store*, 736 F.3d 88, 106 (2d Cir. 2013) ("[I]f an obligation is initially payable to one person, that person is the creditor even if the obligation by its terms is simultaneously assigned to another person.").

Nevertheless, there are certain limited circumstances where an assignee can be subject to liability for a creditor's violation. *See id.* at 105 (TILA "imposes general liability only on creditors and greatly circumscribes the liability of assignees."). Applicable here, 15 U.S.C. § 1641(e)(1) provides:

> [A]ny civil action for a violation of this subchapter . . . with respect to a consumer credit transaction secured by real property may be maintained against any assignee of such creditor only if—

14

> (A) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter; and
>
> (B) the assignment to the assignee was voluntary.

Accordingly, Fannie Mae can only be liable for any alleged violation of TILA if the violation "is apparent on the face of the disclosure statement." "A disclosure statement is a document provided before the extension of credit that sets out the terms of the loan." *Evanto v. Fannie Mae*, 814 F.3d 1295, 1297 (11th Cir. 2016). There is no evidence before this court that the violations alleged here—that Seterus failed to timely apply the insurance funds to pay off the Dentons' loan and failed to provide accurate periodic statements as required—appeared on the face of the disclosure statement. *See id.* at 1297-98 ("There is no way that the failure to provide a payoff balance can appear on the face of the disclosure statement."). As a result, Fannie Mae cannot be liable for these alleged violations of TILA.

The Dentons argue such a result is inconsistent with the purposes of TILA. However, Congress was clear about the conditions under which an assignee may be liable under TILA. *See Vincent*, 736 F.3d at 109 ("We may think it unwise to allow an assignee to escape TILA liability when it overcharges the debtor and collects unauthorized fees, where the original creditor would otherwise be required to refund the debtor promptly. But such a result is not 'absurd.' We will not rewrite the text of the statute, nor will we refuse to defer to the Federal Reserve's consideration of the liability of assignees in Regulation Z."). The statutory prerequisites for assignee liability are not present here.[2] Accordingly, Fannie Mae is entitled to summary judgment on the Dentons' TILA claim.

---

[2] Under TILA, consumers are entitled to assert all claims and defenses against assignees to high-cost mortgages that they could assert against creditors. *See* 15 U.S.C. § 1641(d). However, the Dentons do not contend their mortgage was high-cost and subject to the Home Ownership and Equity Protection Act of 1994.

### E.  *Mr. Cooper's Liability*

Fannie Mae's final argument in favor of summary judgment is that "if this Court grants summary judgment in favor of Mr. Cooper on" Counts VII, VIII, IX, and X "summary judgment should also be entered in favor of Fannie Mae." [Doc. 105, p. 28]. Mr. Cooper is entitled to summary judgment on Counts IX and X because it is not a party to the Dentons' note or mortgage. Fannie Mae, however, is the assignee and owner of the Dentons' note and mortgage. Accordingly, Fannie Mae is not entitled to summary judgment on Counts IX and X, despite the court's ruling in favor of Mr. Cooper.

## V.  Conclusion

WHEREFORE, Fannie Mae's Motion for Summary Judgment is granted in part and denied in part. The motion is granted with respect to Counts II (violation of TILA) and VI (violation of 46 O.S. § 15) of the Second Amended Complaint and the Dentons' request for damages pursuant to 23 O.S. § 9.1. The motion is otherwise denied.

IT IS SO ORDERED this 20th day of April, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE